NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 21

Nos. 2017-058, 2017-152, 2017-153 & 2017-213

| | |
|---|---|
| State of Vermont, Department of Taxes | Supreme Court |
| v. | On Appeal from<br>Superior Court, Chittenden Unit,<br>Civil Division |
| Kenneth C. Montani | |
| State of Vermont, Department of Taxes | October Term, 2017 |
| v. | |
| Thomas A. Tatro | |
| State of Vermont, Department of Taxes | |
| v. | |
| Tyre Duvernay | |
| State of Vermont, Department of Taxes | |
| v. | |
| Thomas L. Marchant | |

Robert A. Mello, J.

Thomas J. Donovan, Jr., Attorney General, and Elizabeth M. Hannon, Assistant Attorney
General, Montpelier, for Plaintiff-Appellant.

Jean L. Murray and Zachary Lees (On the Brief), Vermont Legal Aid, Inc., Montpelier, for
Amicus Curiae Vermont Legal Aid, Inc. and Defendant-Appellee Marchant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **SKOGLUND, J.** The Vermont Department of Taxes appeals from trial court orders in favor of defendants in these consolidated tax-collection cases. The court concluded that the underlying tax debts were invalid because the Department issued its notices of deficiencies or assessments of penalty or interest to defendants more than three years after defendants' tax returns were originally due. The Department argues that the court lacked subject matter jurisdiction to consider the validity of the underlying debts in these collection actions, and that, in any event, it

erred in concluding that a three-year limitation period applied. We agree with the Department on both points. We therefore reverse and remand for entry of judgment in the Department's favor for the years covered in the above-captioned cases.

¶ 2. We first must review the relevant statutes. As a general matter, Vermont's tax laws are "intended to conform the Vermont personal and corporate income taxes with the United States Internal Revenue Code, except as otherwise expressly provided, in order to simplify the taxpayer's filing of returns, reduce the taxpayer's accounting burdens, and facilitate the collection and administration of these taxes." 32 V.S.A. § 5820(a). When the Commissioner of Taxes believes that a taxpayer has failed to file a required tax return or failed to file a complete return, the Commissioner "may, by written notice to the taxpayer, require that the taxpayer file that return, or an additional supplementary return" that contains information "by which the taxpayer's tax liability may correctly be determined." Id. § 5863. Section 5863 does not provide any time limit on taking such action. Once this notice is provided, a taxpayer has fifteen days in which to file a return. If the taxpayer fails to do so, the Commissioner "may compute the tax liability of the taxpayer with respect to which the return was required to be filed, according to the Commissioner's best information and belief." Id. § 5864(b). The Commissioner must then "notify the taxpayer of his or her deficiency with respect to the payment of that tax liability, and may assess any penalty or interest with respect thereto." Id.

¶ 3. When a taxpayer receives a notice of deficiency, or of an assessment of penalty or interest, he or she has sixty days in which to "petition the Commissioner in writing for a determination of that deficiency . . . or assessment." Id. § 5883. If such a petition is filed, the Commissioner then holds a hearing and notifies the taxpayer in writing of the determination concerning the deficiency or assessment. Id. The taxpayer then has the right to appeal the determination to the superior court within thirty days. Id. § 5885. By law, this is a taxpayer's "exclusive remedy" with respect to a notification of deficiency or assessment of penalty or interest. Id. § 5887(a). If a taxpayer fails to pursue this remedy, he or she is "bound by the terms of the

2

notification, assessment, or determination" and cannot "thereafter contest, either directly or indirectly, the tax liability as therein set forth, in any proceeding including . . . a proceeding for the enforcement or collection of all or any part of the tax liability." Id. § 5887(b).

¶ 4.     Section 5882 of Title 32 is entitled "Time limitation on notices of deficiency and assessment of penalty and interest." It provides that "[t]he Commissioner may notify a taxpayer of a deficiency with respect to the payment of any tax liability, or assess a penalty or interest with respect thereto . . . at any time within three years after the date that tax liability was originally required to be paid." Id. § 5882(a). Section 5882(b) provides exceptions to this rule, including the following: "(1) If the taxpayer fails to file a proper return with respect to any tax liability at the time prescribed for its filing, the notification or assessment may be made at any time before the end of three years after the taxpayer files such a return"; and "(2) If the deficiency is caused by reason of fraud or the willful intent of the taxpayer to defeat or evade this chapter, the notification or assessment may be made at any time."

¶ 5.     The law also describes how the Department can collect unpaid deficiencies and assessments. After a taxpayer is notified of a deficiency and upon assessment against the taxpayer of any penalty or interest under 32 V.S.A. §§ 3202 and 3203, "the amount of the assessment shall be payable forthwith and the amount of the deficiency and assessment shall be collectible by the Commissioner 60 days after the date of the notification or assessment." Id. § 5886(a). The collection action is stayed if the taxpayer engages in the § 5883 appeal process described above. Id. § 5886(a)(1), (2). The law provides that "[a]ny tax liability imposed by this chapter becomes, from the time the tax liability is due and payable, a debt of the taxpayer to the State, to be recovered in an action on this title." Id. § 5891. An action to recover the amount of the tax liability must be brought "within six years after the date the tax liability was collectible under section 5886 of this title." Id. § 5892(a).

¶ 6.     With this background in mind, we turn to the facts. Each case shares the same basic fact pattern. Defendants Thomas Tatro, Kenneth Montani, and Tyre Duvernay failed to file

3

personal income tax returns for various years and the Department sent a First Notice of Audit

Assessment to each that provided the amount of taxes due along with interest and penalties. These

notices were issued more than three years after the date that the tax returns should have been filed.

Defendants did not appeal the assessments to the Commissioner pursuant to 32 V.S.A. § 5883.

The issue before the superior court in each case arose in the context of a collection action brought

by the Department.[1]  Defendants Tatro, Montani, and Duvernay did not appear or participate in

the collection cases or in these appeals. The Department moved for default judgment. The superior

court sua sponte raised a statute-of-limitations challenge to the underlying tax assessments.

¶ 7.     The court held that 32 V.S.A. § 5864, which authorizes the Commissioner to

demand that a return be filed, was subject to the time limitations of § 5882, and that § 5882(a)

required the Commissioner to notify a taxpayer of a deficiency and any accompanying penalty or

interest assessment "within three years after the date that tax liability was originally required to be

paid" regardless of whether a return was filed.  The court found no applicable exception to this

requirement, reasoning that if the Legislature intended to allow the Department unlimited time in

which to seek judgments against nonfilers, it would have said so in § 5882.  The court dismissed

the cases on the basis that the underlying notifications of deficiency or assessments were time-

barred with exceptions not relevant here.

¶ 8.     As to Tatro, the court addressed the Department's motion to reconsider that relied

on § 5887, which makes unchallenged deficiency notifications and assessments final and

uncontestable.  The court concluded that it had jurisdiction to consider the validity of the

underlying assessment despite the plain language of § 5887 because it was authorized to decide

the collection action.  It further reasoned that, while the statute bars a taxpayer from challenging

the assessment of a tax liability, it did not expressly deprive the court of its authority to determine

---

[1] Montani failed to file for tax years 2003-2006; Duvernay failed to file for tax years 2006-2008; Tatro failed to file for tax years 2007-2011.  With respect to Tatro, the court granted judgment in favor of the Department with respect to tax years 2010 and 2011.

4

if the evidence presented was sufficient to support the result requested by the Department in the collection action, or to determine if the Department had authority to issue a notice of assessment outside of the time provided by § 5882(a). It said that to accept the Department's argument would reduce the court's function to that of a rubber stamp, citing <u>DaimlerChrysler Servs. N. Am., LLC v. Ouimette</u> as support for its position. 2003 VT 47, ¶ 6, 175 Vt. 316, 830 A.2d 38 (concluding that trial court could consider expiration of statute of limitations if "apparent on the face of plaintiff's complaint"). The court also posited that it had not addressed the substance of the assessments; rather, it had ruled that the Department lacked authority to issue the assessment outside of the statutory time limitation.

¶ 9.     The trial court issued essentially the same decision for Marchant. Marchant failed to file state tax returns for tax years 2001-2007. In 2009, Marchant was notified by letter that his returns had not been filed. Receiving no response, the Department sent First Notice of Audit Assessments with respect to those years. He did not appeal the assessments to the Commissioner. He began remitting payments toward his debt in May 2015. The Department then initiated litigation to keep the debt collectible beyond the limitations period set forth in 32 V.S.A. § 5892 to continue to accept Marchant's payments. In his answer to the complaint, Marchant accepted responsibility for the debt and requested a reasonable payment plan. Then, Vermont Legal Aid filed a motion to amend on his behalf, raising a defense based on the timeliness of the underlying assessments. The Department filed a motion for summary judgment.

¶ 10.     The court dismissed with prejudice claims for tax years 2001-2006 as untimely.[2] In its decision, the court elaborated somewhat on its statutory analysis. As suggested above, the Department asserted that when a return is <u>not</u> filed, there is no time limitation on proper notification of deficiency. The court rejected this argument, applying the three-year limitation

---

[2] The Department alleged Marchant failed to file in tax years 2001-2007, 2012, and 2015. The court granted the Department's summary judgment motion with regard to 2007 and 2012 and set a hearing for the 2015 claims. The parties later reached a stipulation as to these claims, and the court entered a final judgment order.

found in § 5882(b)(1). It determined that § 5882(b)(1) simply started a new limitations period "in the event that a taxpayer files a late return, presumably so that the Department still had time to determine, based on the new return, if there was a deficiency."

¶ 11. The court found the Department's interpretation would lead to an absurd result, reasoning that the Department could infinitely delay the running of the limitations period by neglecting to demand that missing returns be filed, only to demand the returns decades after their original due date. The court acknowledged that federal income tax law allowed this exact result but pointed to differences in statutory language. Federal law provides as a general rule for federal income tax purposes that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)." 26 U.S.C. § 6501(a). It provides an exception, however, when no return is filed, and in such cases "the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time." Id. § 6501(c)(3); see also Schiff v. United States, 919 F.2d 830, 833 (2d Cir. 1990) ("Generally, an assessment must be made within three years of the filing of a tax return. When no return is filed, however, an assessment may be made at any time." (citation omitted)).

¶ 12. In response to the Department's motion to permit interlocutory appeal, which the court denied, the court also addressed the Department's argument that the notices of deficiencies were final under § 5887. It resolved this issue the same way as it did for Tatro discussed above. A final judgment order was later issued, and we consolidated these appeals for review.

¶ 13. The Department first argues that the superior court lacked jurisdiction to review the timeliness of the deficiency judgments because taxpayers failed to appeal them under § 5883, and they thereby became final and uncontestable. It asserts that the court's reasoning is inconsistent with the statutory requirement that all challenges to an assessment be exhausted before a debt can be collected. Even if the court below could consider this issue, the Department contends that the court erred in concluding that a three-year statute of limitations applied here. It maintains that

6

under the plain language of the statute, the Commissioner may assess taxes against nonfilers at any time.

¶ 14. We begin with the court's ability to examine the validity of the underlying tax deficiency determinations. The court found such action appropriate, even if defendants did not raise the issue, because a court "has the authority to consider expiration of the statute of limitations if apparent on the face of plaintiff's complaint," quoting from DaimlerChrysler Services North America, LLC, 2003 VT 47, ¶ 6. The court misconstrued our holding in DaimlerChrysler.

¶ 15. In DaimlerChrysler, the trial court denied the plaintiff's request for a default judgment in an action to collect a deficiency remaining on a motor vehicle retail installment contract. The court sua sponte determined that the complaint was time-barred under the four-year statute of limitations for sales contracts under Article 2 of the Uniform Commercial Code. The plaintiff argued on appeal that the waiver provisions in Vermont Rule of Civil Procedure 8(c) prevented a court from raising an affirmative defense for a party in default. "We decline[d] to make such a hard and fast rule." Id. ¶ 5. We recognized that Rule 8(c) "is primarily a notice provision, intended to prevent unfair surprise at trial." Id. (quotation omitted). We explained that the rule is also "subject to exceptions allowing the court to act sua sponte if necessary to do substantial justice and if there is no prejudice to the parties." Id. We found the exception "appropriate in the context of a default judgment where, as here, there have been no pleadings submitted by the party in default, there will be no trial, and there is no prejudice to the plaintiff since the statute of limitations defect is apparent on the face of [the] plaintiff's complaint." Id.

¶ 16. We also cited Vermont Rule of Civil Procedure 55(b), which commits judgment by default to the trial court's discretion. We reasoned that "if the court can investigate the merits prior to issuing judgment against a party in default, it also has the authority to consider expiration of the statute of limitations if apparent on the face of [the] plaintiff's complaint." Id. ¶ 6. Under these circumstances, we found no abuse of discretion in the trial court's conclusion that the complaint was time-barred. Id.

7

¶ 17.    As noted above, the trial court here found the Department's underlying deficiency judgments, with exceptions not relevant here, to be time-barred.  Although its decision as to Marchant involved a motion for summary judgment rather than a request for a default judgment, the court stated that it retained the same power to decline to issue judgment in favor of a plaintiff whose claim was time-barred.

¶ 18.    The circumstances here are much different circumstances than in DaimlerChrysler. Most importantly, the relevant statute of limitations is the six-year limitation on collection actions. See 32 V.S.A. § 5892(a).  Had the court applied a statute of limitations to the Department's collection action, then DaimlerChrysler would perhaps be relevant.  But, that is not what happened. The court failed to appreciate that the underlying assessments were binding on the taxpayer who failed to petition under § 5883 from a notice of deficiency or assessment or appeal pursuant to § 5885.  See id. § 5887(b).  The statutory scheme requires that all challenges to an assessment be exhausted before a debt can be collected.  Id. § 5886; see also J. Hellerstein, State and Local Taxation 983 (6th ed. 1997) ("Ordinarily, once a taxpayer has exhausted all of its rights to appeal an assessment, the state taxing authority is entitled to begin collection proceedings."); cf. Dep't of Taxes v. Murphy, 2005 VT 84, ¶ 9, 178 Vt. 269, 883 A.2d 779 (explaining that where taxpayers were assessed land gains tax, and assessment became final following appeal process set forth in statute, doctrine of res judicata barred taxpayers from litigating merits of tax assessment in collection action brought by Department).

¶ 19.    The law provides an exclusive method for challenges to assessments—whether on statute-of-limitations grounds or otherwise—and that method was not pursued in these cases. Therefore, by law, the underlying deficiency judgments on which the collection actions are based became final and uncontestable.  Id. § 5887(b); see also Stone v. Errecart, 165 Vt. 1, 5, 675 A.2d 1322, 1325 (1996) (recognizing that § 5887 provides "exclusive remedy" for taxpayers seeking to challenge assessment, that "superior court has no jurisdiction to consider an income tax refund suit by any other route," and that "[i]t is difficult to conceive of a clearer legislative direction than we

8

have here"). Defendants are "bound by the terms of the . . . assessment," and the law specifically prohibits the assessments from being challenged in a collection proceeding. 32 V.S.A. § 5887(b). The title of § 5887—"Remedy exclusive; determination final"—could not make this more clear.

¶ 20.    We reject the distinction that the trial court tried to draw: that it, but not a taxpayer could challenge the validity of the deficiency judgment in a collection proceeding. This is a distinction without a difference. The trial court's approach leads to the exact same result expressly prohibited by statute—it would render § 5887 meaningless and eliminate the finality that the Legislature expressly attributed to deficiency determinations.

¶ 21.    The Department argues that collection actions can occur years after the assessment has become final, as the Department's practice is to attempt to collect the debt without litigation, before commencing a collection action under 32 V.S.A. § 5892. When, as in these cases, a judgment order is necessary to collect the debt, the Department will initiate litigation. These actions are collection actions and not appeals of assessments.

¶ 22.    As noted above, the relevant statute-of-limitations here is the six-year limitation on collection actions. See 32 V.S.A. § 5892(a). In all four cases, it is undisputed that the Department brought its collection cases within six years of the notices of audit assessments provided to defendants. They were timely. Thus, there is nothing on the face of the Department's complaints that would preclude judgments in its favor on statute-of-limitations grounds. It was error for the trial court to decide otherwise.

¶ 23.    While we need not reach the Department's second argument—that the Department can demand a tax return and compute a nonfiler's tax liability at any time—we do so to clarify the law with respect to deficiency judgments. We agree with the Department's assertion. This conclusion is consistent with the statute and with federal income tax law, and it avoids absurd results.

¶ 24.    We review the trial court's interpretation of the tax laws de novo. Felis v. Downs Rachlin Martin PLLC, 2015 VT 129, ¶ 36, 200 Vt. 465, 133 A.3d 836. "Our goal in interpreting

9

a statute is to effectuate the intent of the Legislature." Id. "In looking at any particular statutory scheme, we look to the whole and every part of it, its subject matter, and its effect and consequences in determining intent." Gallipo v. City of Rutland, 173 Vt. 223, 235, 789 A.2d 942, 951 (2001). "Our goal is also to harmonize statutes and not find conflict if possible." Id. We will avoid constructions that "produce absurd or illogical consequences." Rhodes v. Town of Georgia, 166 Vt. 153, 157, 688 A.2d 1309, 1311 (1997); see also Gallipo, 173 Vt. at 235, 789 A.2d at 952 ("We should not construe statutes to reach unreasonable results manifestly unintended by the legislature."). Additionally, "[s]tatutes of limitation sought to be applied to bar rights of the Government [] must receive a strict construction in favor of the Government." Bardaracco v. Comm'r of Internal Revenue, 464 U.S. 386, 391 (1984) (quotation omitted); see also Lucia v. United States, 474 F.2d 565, 570 (5th Cir. 1973) ("[L]imitation statutes barring the collection of taxes otherwise due and unpaid are strictly construed in favor of the Government.").

¶ 25.   As previously noted, the law empowering the Commissioner to demand that a tax return be filed, or that a taxpayer file a more complete return, contains no time limitation. See 32 V.S.A. § 5863. It simply states that when the Commissioner believes that a taxpayer has not filed a required tax return or has filed an incomplete return, the Commissioner "may, by written notice to the taxpayer, require that the taxpayer file that return, or an additional supplementary return" containing the "information by which the taxpayer's tax liability may correctly be determined." Id.

¶ 26.   Turning to the limitations periods set forth in § 5882, we conclude that the three-year limitation period governing notice of a deficiency in § 5882(a) presupposes a return was filed that was found deficient. Section 5882(a) states that "[t]he Commissioner may notify a taxpayer of a deficiency with respect to the payment of any tax liability, or assess a penalty or interest with respect thereto, in accordance with section 3202 of this title, at any time within three years after the date that tax liability was originally required to be paid under this chapter."

10

¶ 27. The exception to the three-year requirement set forth in § 5882(b) recognizes this process. When a taxpayer "fails to file a proper return with respect to any tax liability[,] . . . the notification or assessment may be made at any time before the end of three years <u>after the taxpayer files such a return</u>." <u>Id</u>. (emphasis added). The exception applies to those who fail to file a "proper return," which logically encompasses those who fail to file <u>any</u> return. See Hellerstein, <u>supra</u>, at 982 (explaining that "statutes of limitations generally do not begin to run unless and until the taxpayer files a return, and they may be extended in the case of alleged impropriety such as fraud on the part of the taxpayer"). In both cases, "the relevant facts ha[ve] not been disclosed to the Commissioner," and the Commissioner therefore lacks "an adequate basis to attempt an assessment." <u>Badaracco</u>, 464 U.S. at 404; see also <u>TD Banknorth, N.A. v. Dep't of Taxes</u>, 2008 VT 120, ¶ 15, 185 Vt. 45, 967 A.2d 1148 (concluding that three-year limitation period ran from date when taxpayer filed "proper" documentation, rather than three years from original filing date, because Department could not develop full picture of taxpayer's liability until that time). It would be illogical to extend the enforcement period for taxpayers whose returns are not "proper," but not for nonfilers.

¶ 28. Our interpretation harmonizes § 5882 with § 5863, which provides the "notification" process for both nonfilers and incomplete filers, and with § 5864, which sets forth the process by which taxpayers' liability is determined in such situations. Section 5863 contains no time limit for demanding a return from a nonfiler or an incomplete filer, and § 5882(b) imposes no time limitation until a proper return is filed. The language of § 5882(b) is plain and we therefore enforce it according to its terms. <u>Felis</u>, 2015 VT 129, ¶ 36. Taxpayers in these cases did not file any returns, and thus, the three-year statute-of-limitations period did not begin to run.

¶ 29. This interpretation not only implements the plain language of the statute and is consistent with the statutory scheme, it also furthers the stated purposes of our tax laws. Marchant's case illustrates this logic. He did not file any Vermont returns for the years in question. In 2007, he filed federal tax returns for tax years 2001-2007. The Vermont Department of Taxes

was unaware of his income prior to the filing of federal returns as he was self-employed and no employer filed a W-2 form on his behalf. If the decision below were upheld, nonfilers would be rewarded for withholding information from the Department and be able to successfully avoid tax liability if the limitations period were to lapse before the Department became aware of a potential liability.

¶ 30. As noted above, Vermont's tax laws are "intended to conform . . . with the United States Internal Revenue Code, except as otherwise expressly provided" to, among other things, "facilitate the collection and administration of these taxes." 32 V.S.A. § 5820(a). Like the federal tax scheme, Vermont law allows the Department to demand a return from a nonfiler at any time. While the Internal Revenue Code may state this more directly, our law directs the same result and there is no express provision to the contrary. It is self-evident that allowing the Department to take such action "facilitate[s] the collection and administration of these taxes." Id. The trial court erred in dismissing these collection cases on statute-of-limitations grounds. We therefore reverse the trial court's decisions and remand for further proceedings consistent with this opinion.

Reversed and remanded for further proceedings consistent with this decision.

FOR THE COURT:

_____

Associate Justice